UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| ALFREDA BARKER, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil No. 09-437-P-S |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant | ) | |

## REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") appeal raises the question of whether the commissioner supportably found the plaintiff, who alleges that she is disabled by osteoarthritis of the hands, hips, and right knee, carpal tunnel syndrome, and neuroma of the feet, capable of performing work existing in significant numbers in the national economy. I recommend that the decision of the commissioner be affirmed.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 405.101 (incorporating 20 C.F.R. § 404.1520); *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff had severe impairments of osteoarthritis of the hands, hips, and right knee, bilateral carpal tunnel syndrome, and bunion and neuroma of the feet, Finding 3, Record at 9; that she retained the residual functional capacity to perform less than the full range of sedentary work, with restrictions including limitation to occupations requiring no more than occasional gross handling

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on June 17, 2010, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

and fine fingering, Finding 5, *id.* at 10; that, considering her age (45, defined as a younger individual, on the alleged onset date), education (high school), work experience (transferability of job skills immaterial), and residual functional capacity, there were jobs existing in significant numbers in the national economy that she could perform, Findings 7-10, *id.* at 13; and that she, therefore, was not disabled, as defined in the Social Security Act, from August 24, 2007, through the date of the decision, Finding 11, *id.* at 14.[2] The Decision Review Board selected the decision for review but did not complete its review within the allotted time, see *id.* at 1-3, making it the final determination of the commissioner, 20 C.F.R. § 405.450(a); *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. § 405.101 (incorporating 20 C.F.R. § 404.1520(g)); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain positive evidence in support of the commissioner's findings regarding the plaintiff's residual work capacity to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

---

[2] The plaintiff was insured for purposes of SSD benefits through December 31, 2011. *See* Finding 1, Record at 9.

**I. Discussion**

The plaintiff raises two points, contending that the administrative law judge erroneously (i) relied on the testimony of a vocational expert that she was capable of performing three jobs, those of type copy examiner, Dictionary of Occupational Titles (U.S. Dep't of Labor, 4th ed. rev. 1991) ("DOT") § 979.687-026, data examination clerk, DOT § 209-387.022, and order caller, DOT § 209.567-014, without resolving conflicts between that testimony and the DOT, as required by Social Security Ruling 00-4p ("SSR 00-4p"), and (ii) deemed her capable of performing a semi-skilled job, that of data examination clerk, without making any finding that she had transferable skills. *See* Plaintiff's Corrected Itemized Statement of Specific Errors ("Statement of Errors") (Docket No. 16) at 2-8.[3] I conclude, and recommend that the court find, that while errors were committed, they are harmless and, therefore, do not warrant reversal and remand.

**A. Conflict With DOT**

Adjudicators are obliged to identify and resolve discrepancies between vocational evidence and the DOT before relying on a vocational expert's evidence to support a Step 5 finding. *See* SSR 00-4p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2009), at 244 ("When there is an apparent unresolved conflict between VE [vocational expert] or VS [vocational specialist] evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled.").

The vocational expert testified that a person limited to only occasional handling and fingering, as the plaintiff was found to be, could perform the jobs of type copy examiner, data

---

[3] At oral argument, the plaintiff's counsel withdrew a third point of error, through which his client had contended that the administrative law judge erred in finding, in the absence of any comparative data, that the jobs in question existed in significant numbers. *See* Statement of Errors at 8-11.

examination clerk, and order caller, which he described as "more visual related type jobs" or "mostly visual." Record at 54-56, 58. Nonetheless, as the plaintiff points out, *see* Statement of Errors at 4-5, the DOT indicates that all three jobs require frequent handling and fingering, *see* DOT §§ 979.687-026, 209-387.022, 209.567-014. The administrative law judge did not acknowledge the discrepancy. *See* Record at 13-14. As counsel for the commissioner acknowledged at oral argument, that was error. However, he contended, the error was harmless in the circumstances, because the vocational expert provided a reasonable explanation for the discrepancy, and the administrative law judge expressly relied on that explanation. *See id*. at 14. I agree.

> The DOT describes the job of type copy examiner as follows:
>
> Examines proofsheets for irregularities in type characters indicative of defects in phototypesetting type disks: Examines each character on proofsheet for breaks, irregular spacing, improper alignment, and eccentricity, using magnifying glass. Circles characters that do not conform to standards, using red pencil. Files approved proofsheets and forwards proofsheets failing to meet standards to SUPERVISOR, TYPE-DISK QUALITY CONTROL[.]

DOT § 979.687-026.

The job of data examination clerk, as described in the DOT, is quite similar to that of type copy examiner: the worker reviews documents for accuracy, completeness, and adherence to prescribed standards, notifies a supervisor of errors, and either corrects those errors or refers them to others for correction. *See id.* § 209.387-022.

> Finally, the job of order caller, or order clerk, is described in the DOT as follows:
>
> Takes food and beverage orders over telephone or intercom system and records order on ticket: Records order and time received on ticket to ensure prompt service, using time-stamping device. Suggests menu items, and substitutions for items not available, and answers questions regarding food or service. Distributes order tickets or calls out order to kitchen employees. May collect charge vouchers and cash for service and keep record of transactions.

4

*Id*. § 209.567-014.

At the plaintiff's hearing, the vocational expert described the job of type copy examiner as a "quality control type job" that is "often found in print shop type environments." Record at 55. He elaborated:

> Typed copy has to be checked visually before it can be used to, for printing or other production type activities. These workers are in significant numbers to, as I said, it's a quality control type job where you look at the typed copy and make certain that there are not any gaps or spaces, that it's lined up in a predetermined manner. These workers also look for completeness. And they do not actually do the type copy. It's a step between the workers who set up type copy and then once it's approved or passes the quality control, . . . it goes to production.

*Id*. at 55-56. He described the data examination clerk job as "[o]nce again, . . . more of a visual type job." *Id*. at 56. He did not describe the nature of the order caller job. *See id*.

The plaintiff's counsel inquired how the vocational expert squared his testimony that a person limited to only occasional handling and fingering could perform the two unskilled sedentary jobs, type copy examiner and order clerk, with a statement in Social Security Ruling 96-9p ("SSR 96-9p") that manipulative limitations significantly erode the occupational base for unskilled sedentary work. *See id*. at 57.[4] The vocational expert responded:

> As I testified, the jobs are mostly visual. So you are not constantly or frequently using your hands for manipulative activities. An example is the examination clerk is often done by computers. You're not operating the computer, sit/stand. Visual acuity step as items are viewed and that's –
>
> ***
>
> I'm trying to think how else to explain it. From professional association of 30 years of doing job placement in these jobs, job analysis, labor market surveys, I have direct knowledge that the, in performance of these jobs, that the

---

[4] SSR 96-9p provides, in relevant part: "Most unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions." SSR 96-9p, reprinted in *West's Social Security Reporting Service,* Rulings 1983-1991 (Supp. 2009), at 159. It notes that "[a]ny significant manipulative limitation of an individual's ability to handle and work with small objects with both hands will result in a significant erosion of the unskilled sedentary occupational base." *Id*.

5

manipulative activities as they're usually performed do not go beyond vocational limits.

*Id*. at 58.

The plaintiff argues that the vocational expert cannot be said to have offered a "reasonable explanation" for the discrepancy with the DOT given that (i) he provided no explanation as to how a worker could perform a critical function of the jobs of both type copy examiner and data examination clerk, namely, identifying and communicating errors in copy, without more than occasional use of the hands, regardless of whether the worker used a computer or the old-fashioned method of paper and red pencil, and (ii) he provided no explanation at all as to how the order caller job is primarily "visual." *See* Statement of Errors at 4-5.

At oral argument, counsel for the commissioner countered that vocational experts need not supply such a detailed level of explanation. He asserted that, because they are qualified as experts, their testimony that their observations are grounded in their direct knowledge or personal experience suffices.

The plaintiff's argument has intuitive appeal. The vocational expert did not explain exactly how the job of order caller or the job function of identifying and communicating errors in copy can be performed with no more than occasional handling and fingering, whether on computers or in the manner contemplated by the DOT. Common sense suggests that any of the three jobs would entail more than occasional handling and fingering, just as the DOT indicates.

Nonetheless, my research indicates that counsel for the commissioner is correct in the premise that SSR 00-4p does not demand that a vocational expert supply that level of detailed explanation. The ruling expressly states:

> Reasonable explanations for [apparent conflicts with the DOT], which may provide a basis for relying on the evidence from the VE [vocational expert] or VS [vocational specialist], rather than the DOT information, include, but are not

> limited to the following: . . . Evidence from VEs or VSs can include information not listed in the DOT. . . . Information *about a particular job's requirements* or about occupations not listed in the DOT may be available in other reliable publications, information obtained directly from employers, or *from a VE's or VS's experience in job placement or career counseling*.

SSR 00-4p at 244-45 (emphasis added).

In accordance with that language, courts have held that a vocational expert's testimony that, in his or her experience, a job is performed differently than described in the DOT, constitutes a "reasonable explanation." *See, e.g., Holcom v. Barnhart*, 79 Fed. Appx. 397, 399 (10th Cir. 2003) (vocational expert provided reasonable explanation, for purposes of SSR 00-4p, when she "explained that although the DOT does not delineate or expressly address all of Holcom's limitations, based on her thirty years of experience in observing these jobs and in placing people in these and other occupations, she concluded that Holcom had the residual functional capacity to perform the jobs identified"); *Hare v. Astrue*, No. 7:08-CV-36-FL, 2009 WL 873993, at *27 (E.D.N.C. Mar. 24, 2009) (vocational expert provided reasonable explanation, for purposes of SSR 00-4p, when "he noted that based on his own professional experience, he believed that the reasoning levels in the DOT did not always match up with the job requirements for certain jobs"); *Hayes v. Astrue*, No. 3:07-CV-137(CDL), 2009 WL 481473, at *3-*4 (M.D. Ga. Feb. 23, 2009) (vocational expert provided reasonable explanation, for purposes of SSR 00-4p, in relying on professional knowledge beyond the DOT to relay that, although DOT listed jobs as light exertional, specific categories of parking lot cashier, cafeteria cashier, and ticket taker would be sedentary and would allow for sit/stand option; SSR 00-4p "notes that the vocational expert must provide a reasonable explanation for any inconsistency [with the DOT]. One basis for a reasonable explanation could be the vocational expert's own experience in job placement and career counseling.").

The vocational expert's testimony, which the administrative law judge accepted, that the three jobs about which he testified were primarily visual and that, based on his direct knowledge from 30 years of placement experience, the manipulative demands of the jobs did not exceed those posited in the hypothetical question, sufficed under SSR 00-4p to provide a "reasonable explanation" for the discrepancy between his description of the jobs and that provided in the DOT. The administrative law judge's error in failing to recognize that a conflict existed accordingly was harmless.

### B. Semi-Skilled Job

The plaintiff also complains that the administrative law judge erred in deeming her capable of performing the job of data examination clerk, listed as having a Specific Vocational Preparation ("SVP") level of 3 and hence considered a semi-skilled job, without finding that she had transferable skills. *See* Statement of Errors at 7-8; SSR 00-4p at 245 (semi-skilled work corresponds to an SVP level of 3 or 4); *Burdick v. Astrue*, Civil No. 07-22-P-S, 2007 WL 2021911, at *2 (D. Me. July 11, 2007) (rec. dec., *aff'd* Aug. 15, 2007) ("A job with an SVP of 3 requires specific vocational preparation of over one month and up to and including three months. Under applicable regulations, jobs are unskilled only if they can be learned in 30 days or less. A finding that a claimant can perform work other than unskilled work must be supported by a finding that specific transferable skills are present, at least for claimants under 55 years of age.") (citations and internal quotation marks omitted).

The administrative law judge indeed erred in deeming the plaintiff capable of performing a semi-skilled job in the absence of a finding that she possessed transferable skills. *See* Finding 9, Record at 13.

Nonetheless, for two reasons, the error is harmless. The administrative law judge supportably found the plaintiff capable of performing the jobs of type copy examiner and order clerk, which the plaintiff does not contest individually, or together, existed in significant numbers in the national economy. And the vocational expert, recognizing that the data examination job was semi-skilled, at SVP level 3, nonetheless testified that a person with the plaintiff's training and work history was capable of performing it. *See id.* at 54, 56-57.

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 29th day of June, 2010.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge